UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**CIRCLEVILLE-PICKAWAY CORPORATION,**

    **Plaintiff,**

    v.

**THE MACINTOSH COMPANY, LLC,** *et al.*,

    **Defendants.**

Case No 2:24-cv-2363
Judge Edmund A. Sargus, Jr.
Magistrate Judge Elizabeth Preston Deavers

## OPINION AND ORDER

This matter is before the Court on Plaintiff Circleville-Pickaway Corporation's Motion to Remand to State Court (ECF No. 10), Defendants The Macintosh Company, LLC's and Optalis Management Solutions, Inc.'s Motion to Stay Pending Arbitration (ECF No. 24), and Defendants' Motion for Preliminary Injunction to Preserve Status Quo Pending Arbitration (ECF No. 25). The Court held a Rule 65.1 Telephone Conference on May 29, 2024 regarding these matters. (ECF No. 27.) For the reasons stated during the Rule 65.1 Conference and explained below, the Court **DENIES** Plaintiff's Motion to Remand (ECF No. 10), **GRANTS** Defendants' Motion to Stay Pending Arbitration (ECF No. 24), and **GRANTS** Defendants' Motion for Preliminary Injunction to Preserve Status Quo Pending Arbitration (ECF No. 25).

## BACKGROUND

Plaintiff filed this action for breach of contract and declaratory judgment in the Pickaway County Court of Common Pleas on May 10, 2024. (Compl., ECF No. 6.) Plaintiff owns skilled nursing and assisted living facilities, collectively known as Pickaway Manor. (*Id.* ¶ 7.) Plaintiff

1

contracted with Defendants to provide services at these facilities, and the Parties' obligations are governed by two leases (the "Leases"), each of which have an arbitration clause. (*Id.* ¶ 9; ECF Nos. 6-1 at PageID # 118, and 6-2 at PageID # 137.) The Leases were set to expire on April 30, 2024, with a requirement that the Defendants give notice of renewal by October 31, 2023. (Compl., ¶¶ 12–15.) Plaintiff claims that no such notice was given, so the Leases defaulted to a month-to-month term, terminable by either Party. (*Id.* ¶¶ 16–18.) Plaintiff gave notice to Defendants that it intended to terminate the Leases effective June 30, 2024. (*Id.* ¶¶ 29–30.) Defendants refused to acknowledge Plaintiff's intention to transfer the Leases to a new operator and did not notify the Ohio Department of Medicaid that a new operator would be taking over the Leases. (*Id.* ¶¶ 31–37.)

Plaintiff moved for a Temporary Restraining Order ("TRO") the same day it filed its complaint. (ECF No. 7.) As part of the relief it sought, Plaintiff requested that this Court order Defendants to file a "Change of Operator Notice" with the Ohio Department of Medicaid—a required step to ensure continuity of care and licensing when a care facility changes operators. (ECF No. 7, at PageID # 153–54.) Defendants timely removed Plaintiff's Complaint to this Court, invoking this Court's diversity jurisdiction. (Not. of Removal, ECF No. 1.) Plaintiff then filed a Motion to Remand (ECF No. 10), which Defendants opposed (ECF No. 26).

During the Court's May 13, 2024 Rule 65.1 Telephone Conference regarding Plaintiff's Motion for a Temporary Restraining Order, the Court obtained from Defendants an assurance that Defendants would not vacate the premises in the foreseeable future, thus assuring Plaintiff that the residents of the facilities would continue to receive adequate care. Defendants stated that they believed they were entitled to a renewed five-year term for the Leases, and indicated they would file a motion to stay this case pending arbitration pursuant to the Leases' arbitration clauses. The

2

Court then denied Plaintiff's Motion for a Temporary Restraining Order and ordered the Parties to mediate before Magistrate Judge Deavers. (ECF No. 16.) The mediation was unsuccessful. (ECF No. 22.)

In the hours following the unsuccessful May 15, 2024 mediation, and just two days after the Court denied Plaintiff its requested relief, Plaintiff unilaterally filed a CHOP Notice with the Ohio Department of Medicaid. (ECF No. 25, at PageID # 245.) The CHOP Notice informed the Ohio Department of Medicaid that Defendants would no longer operate Pickaway Manor as of June 29, 2024. (*Id.*)

Defendants moved to stay this case pending arbitration. (ECF No. 24.) Due to Plaintiff's unilateral CHOP Notice, Defendants also moved for a preliminary injunction to preserve the status quo pending arbitration. (ECF No. 25.) Defendants asked the Court to order Plaintiff to rescind the CHOP Notice because the case has not been arbitrated.

## ANALYSIS

First, the Court addresses Plaintiff's Motion to Remand. Second, the Court addresses Defendants' Motion to Stay. Finally, the Court considers Defendants' Motion for Preliminary Injunction to Preserve Status Quo Pending Arbitration.

### I. Plaintiff's Motion to Remand

This case was removed to the Court on diversity jurisdiction. A federal court has diversity jurisdiction where the suit is between "citizens of different states" and the amount in controversy exceeds $75,000.00, exclusive of costs and interest. 28 U.S.C. § 1332(a); *Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 871 (6th Cir. 2000). Section 1332(a) requires complete diversity, meaning the statute "applies only to cases in which the citizenship of each plaintiff is diverse from the citizenship of each defendant." *Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 68 (1996); *Peters v.*

*Fair*, 427 F.3d 1035, 1038 (6th Cir. 2005) (requiring that no defendant share citizenship with any of the plaintiffs). The party invoking diversity jurisdiction carries the burden of demonstrating that the complete diversity and amount in controversy requirements are met. *Hertz Corp. v. Friend*, 559 U.S. 77, 96 (2010).

Plaintiff moved to remand this case to the Pickaway County Court of Common Pleas because it has stipulated to recovering no more than $75,000.00 in damages. (Pl. Mot., ECF No. 10, at PageID # 177–80; Pl. Stipulation, ECF No. 11.) Moreover, Plaintiff argues that the amount of damages claimed by plaintiffs controls the jurisdictional inquiry—not, as Defendants argue, the amount of monetary damage a defendant may suffer as result of an adverse ruling. (Pl. Mot., ECF No. 10, at PageID # 183.)

Defendants argue that where, as here, a case involves a request for injunctive or declaratory relief, "courts look to the value of the object of the litigation as well as the pecuniary effect an adverse declaration will have on either party." (Def. Resp., ECF No. 26, at PageID # 288.) Defendants note that the objects of this litigation are the Leases, and the central dispute is whether they properly renewed the Leases for another five-year term at a monthly rent rate of over $76,686.24. (*Id.* at PageID # 288, 293 (citing *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977)).) Defendant also argues that if Plaintiff succeeds in transitioning operation of Pickaway Manor to a new operator, Defendants will lose millions in lost profits, incur more than $75,000.00 from costs associated with vacating the premises and transitioning the licensing and operation of the facilities to a new operator, and pay over $100,000.00 in severance packages to employees. (*Id.* at PageID # 289, 298–99; Decl. of Raj Patel, ECF No. 26-1, at PageID # 303–04.)

While Plaintiff has stipulated to recovering less than $75,000.00, the amount of rent paid

4

by Defendants per month and the costs of complying with Plaintiff's requested injunctive and declaratory relief makes clear that the amount-in-controversy requirement is met. For actions seeking a declaratory judgment, courts in the Sixth Circuit measure the amount in controversy by "the value of the object of the litigation," and courts may consider a lessee's anticipated future loss. *Northup Properties, Inc. v. Chesapeake Appalachia, L.L.C.*, 567 F.3d 767, 770–71 (6th Cir. 2009) (quoting *Hunt*, 432 U.S. at 347). Defendants claim to have renewed the Leases for a term of at least five years. (Def. Resp., ECF No. 26, at PageID # 293.) As Defendants note, the combined monthly rent for the Leases is over $75,000.00 per month. (Patel Decl., ECF No. 26-1., at PageID # 303.) Thus, the value of the object of the litigation—the Leases—demonstrate that the amount in controversy for diversity jurisdiction is met.

For the reasons stated herein and during the Court's May 29, 2024 Telephone Conference, the Court **DENIES** Plaintiff's Motion to Remand.

## II. Defendants' Motion to Stay Pending Arbitration

Defendants moved to stay this case pending arbitration. (ECF No. 24.) On the record, Plaintiff conceded that this case was subject to arbitration and agreed with Defendants that this Court may enter an order preserving the status quo. (ECF No. 21, at PageID # 222–23.) In its brief, however, Plaintiff has requested that if the Court grants a status quo order, Plaintiff should still be permitted to pursue an eviction of Defendants and other parties in possession of the Leases in state court. (ECF No. 29, at PageID # 310.) For the reasons discussed in section III, *infra*, the Court will not grant Plaintiff's request.

Accordingly, the Court **GRANTS** Defendants' Motion to Stay this Case Pending Arbitration.

**III.     Defendants' Motion for Preliminary Injunction to Preserve Status Quo**

Finally, as the Court explained during the May 29, 2024 Rule 65.1 Telephone Conference, the Court will enter a status quo order pending arbitration. While the Parties agreed that the Court may enter a status quo order pending arbitration, they disagree regarding what the status quo is. Defendants argue that they should be permitted to continue operating Pickaway Manor until this dispute can be ruled upon in arbitration. Plaintiff contends that the status quo requires Defendants to vacate the Pickaway Manor and, because it has given Defendants notice of its intent to terminate the month-to-month term, the Leases have been terminated effective June 30, 2024. (Pl. Resp., ECF No. 30, at PageID # 322.) The Court agrees with Defendants and will issue a modified status quo order similar to what they have requested.

In determining whether to issue a preliminary injunction, the Court must balance four factors: (1) whether the movant has shown a strong likelihood of success on the merits; (2) whether the movant will suffer irreparable harm if the injunction is not issued; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuing the injunction. *Shah v. Fortive Corp.*, No. 1:22-cv-312, 2022 U.S. Dist. LEXIS 108953, at *7 (S.D. Ohio June 17, 2022) (citing *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000)). These four considerations are balancing factors, not prerequisites that must be met. *Id*. (citing *United Food & Com. Workers Union, Local 1099 v. Sw. Ohio Reg'l Transit Auth.*, 163 F.3d 341, 347 (6th Cir. 1998)). "[A] district court is not required to make specific findings concerning each of the four factors used in determining a motion for preliminary injunction if fewer factors are dispositive of the issue." *Jones v. City of Monroe*, 341 F.3d 474, 476 (6th Cir. 2003), *abrogated on other gds. by Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015). Finally, "it is improper for a court to decide a contractual dispute relegated to arbitration."

*Performance Unlimited, Inc. v. Questar Publishers, Inc.*, 52 F.3d 1373, 1385 (6th Cir. 1995) (quoting *Sauer-Getriebe KG v. White Hydraulics, Inc.*, 715 F.2d 348, 352 (7th Cir. 1983)).

First, Plaintiff and Defendants argue about who has a greater likelihood of succeeding on the merits. Because the Court is weary of deciding the merits of a contractual dispute requiring arbitration, and the other factors clearly weigh in favor of granting Defendants' motion, the Court need not wade into the merits.

Second, Defendants are far more likely to suffer irreparable harm if the injunction is not issued. Plaintiff argues that both it and the residents of Pickaway Manor will suffer irreparable harm if the Court enters Defendants' requested status quo order. (Pl. Resp., ECF No. 30, at PageID # 325.) While Plaintiff discusses the harm it will suffer from having already secured a new lessee for the facilities, Plaintiff does not explain how the residents of the facilities will suffer from permitting Defendants to remain as operators during arbitration. Its claims of irreparable harm to the residents are conclusory in nature. There is nothing in the record indicating that Defendants have been providing substandard care to the residents. Were this Court to force Defendants to transfer the Leases to Plaintiff's new operators and the Arbitrators subsequently found in favor of Defendants, the operator of Pickaway Manor would transfer multiple times, risking continuity and standard of care provided to residents. By ordering the Parties to remain in compliance with the existing Leases, the Court preserves the option that the Arbitrators find for Plaintiff and allows Plaintiff to transfer operations to a new care provider, all without risking continuity of care for residents.

Third, issuing the status quo order requested by Defendants will not harm others. Indeed, as discussed in factor two, harm to others is more likely to occur if the Court permits Plaintiff to proceed with changing operators before the Parties arbitrate their dispute.

Fourth and finally, the public interest would be served by granting Defendants' status quo motion. The members of the public most affected by this case are the residents of Pickaway Manor. As discussed herein, the interests of the residents are best served by stability. Ensuring continuity of care is paramount while the Parties resolve their contract dispute before the Arbitrators. The Court finds that he best way to ensure stable care is by ordering the Parties to remain in place while the Arbitrators evaluate the merits of this dispute.

Accordingly, three factors clearly weigh in favor of granting Defendants' requested relief. The Court finds that the prudent course of action is to enter a status quo order requiring the Parties to refrain from taking any step that would effectively terminate or otherwise impair the Leases and order Plaintiffs to rescind the CHOP notice filed with the Ohio Department of Medicaid. Thus, the Arbitrators will have an opportunity to adjudicate the merits of the Parties' dispute.

For these reasons and those discussed on the May 29, 2024 Telephone Conference, the Court **GRANTS** Defendants' Motion for Preliminary Injunction to Preserve Status Quo Pending Arbitration.

## CONCLUSION

For the reasons discussed above and at the Court's May 29, 2024 Rule 65.1 Telephone Conference, the Court **DENIES** Plaintiff's Motion to Remand (ECF No. 10), **GRANTS** Defendants' Motion to Stay Pending Arbitration (ECF No. 24), and **GRANTS** Motion for Preliminary Injunction to Preserve Status Quo Pending Arbitration (ECF No. 25). Thus, the Arbitrators shall have the opportunity to evaluate the Parties' arguments and determine whether Defendants are entitled to a renewed term for the Leases, or whether Defendants now hold a month-to-month lease terminable by Plaintiff with the appropriate notice. In the meantime, the Court **ORDERS** the following injunctive relief:

1. The Parties are **ORDERED** to expedite arbitration;

2. The Parties are **ORDERED** to refrain from taking any action or inaction to disrupt the status quo described in the May 29, 2024 Telephone Conference and in this Order. Neither party shall take any steps that would effectively terminate or otherwise impair the Leases at issue. Each party shall maintain compliance with the Leases' terms, including by paying the required rent and providing the requisite services; and

3. Plaintiff is **ORDERED** to rescind the CHOP notice filed with the Ohio Department of Medicaid until the Arbitrators issue a decision on the Parties' dispute.

The Clerk is **DIRECTED** to **STAY** this case pending arbitration.

**IT IS SO ORDERED.**

**6/6/2024**  **s/Edmund A. Sargus, Jr.**
**DATE**  **EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**